UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**FIRST CASH, INC. F/K/A FIRST CASH FINANCIAL SERVICES, INC.,**

   Plaintiff,

v.                                No. 4:20-cv-1247-P

**CHADBORNE T. SHARPE,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Plaintiff First Cash Inc. filed a Motion for Summary Judgment requesting the Court to compel arbitration of this case. ECF No. 37. Defendant Chadborne Sharpe filed a Motion for Summary Judgment seeking to invalidate the relevant arbitration clauses. ECF No. 42. The dispute underlying this lawsuit has played out in several different venues: the American Arbitration Association, a North Carolina state court, and this Court. The Court is now tasked with determining the proper avenue for this case to reach resolution. Having considered the motions, briefs, relevant docket entries, and applicable law, the Court grants First Cash's motion in part, denies Sharpe's motion, and refers this case to arbitration.

## FACTUAL BACKGROUND

The lawsuit involves two Asset Purchase Agreements ("Agreements") for the sale of more than twenty pawn stores in North Carolina and Virginia for total amount of roughly $25 million. The Agreements were effective as of June 16, 2015.

Plaintiff ("First Cash") was defined in the Agreements as a contractual party and was a signatory to the Agreements. Defendant ("Sharpe") was also defined in the Agreements as a contractual party in his individual capacity as a 100% shareholder of the selling entities. Together, Sharpe and the selling entity were defined as "Seller Parties"

who jointly and severally made the representations within the Agreements. Sharpe therefore signed the Agreements both in his individual and representative capacities.

The Agreements both contained a clause stating that the they would be "governed, construed and enforced" in accordance with Texas law. Also, the Agreements both contained arbitration clauses and incorporated the Commercial Arbitration Rules of the American Arbitration Association. Specifically, the arbitration clauses in the Agreements state that "all disputes will be decided by binding arbitration, conducted in Tarrant County, Texas . . . ." (fully capitalized in original). The Agreements broadly defined "Disputes" to include: "any claims, demand, action, or cause of action arising under this agreement or in any way connected with or related or incidental to the dealings of the parties here to with respect to this agreement, or the transaction related thereto . . . ." (fully capitalized in original).

## PROCEDURAL BACKGROUND

This case has a convoluted procedural history. The Parties' dispute began when First Cash filed a Demand with the American Arbitration Association ("AAA") in June 2019. That action was assigned Case Number 01-19-0001-8319 and set the hearing locale as Tarrant County, Texas ("Arbitration Action"). Sharpe challenged the arbitration clauses in the Agreements as invalid and unenforceable based on a North Carolina statute. The Arbitration Review Council denied this challenge to venue and arbitrability on August 7, 2019.

About one week later, Sharpe filed a Complaint for Declaratory Judgment and Motion to Stay Arbitration in the Superior Court of Alamance County, North Carolina ("North Carolina Case"). There, Sharpe asked the state court to stay the Arbitration Action, have the arbitration clauses in the Agreements deemed unenforceable and invalid, and hold that Sharpe was not bound by those arbitration clauses. The Parties proceeded to arbitrate in the Arbitration Action for eleven months after Sharpe filed the North Carolina Case. Then, in September 2020, the North Carolina trial court granted Sharpe's motion

2

to stay the Arbitration Action. Over a year later, however, the Court of Appeals of North Carolina reversed the order staying arbitration.

On November 16, 2020, First Cash initiated the present lawsuit by filing a complaint and application to compel arbitration. There are now cross-motions for summary judgment before the Court. The motion are fully briefed and ripe for review.

## LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate where the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate an issue as to material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must show sufficient evidence to resolve issues of material fact in its favor. *Anderson*, 477 U.S. at 249.

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255. However, it is not incumbent upon the Court to comb through the record in search of evidence that creates a genuine issue as to a material fact. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party must cite the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Finally, when parties file cross motions for summary judgment, the court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *See, e.g., Six Dimensions, Inc. v.*

3

*Perficient, Inc.*, 969 F.3d 219, 224 (5th Cir. 2020) (quoting *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014)).

### B. Standard to Compel Arbitration Under 9 U.S.C. § 4

Courts make two determinations when deciding a motion to enforce an arbitration agreement. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). First, courts ask "whether there is a valid agreement to arbitrate," which is an "analysis of contract formation[.]" *Id.* (citations omitted). Under this step of the analysis, courts use state law to evaluate the underlying agreement. *Id.* at 745 (citation omitted). If the agreement at issue contains a choice-of-law provision, that state's law guides the inquiry. *See id.*

When the parties agree to arbitrate, courts then look to whether the party seeking arbitration claims that there is a delegation clause. *Id.* If this argument is raised, courts must determine whether the parties in fact agreed to delegate the issue of arbitrability to the arbitrator. *Id.* If there is no such delegation clause, courts determine "whether the current dispute falls within the scope of a valid agreement." *Id.* at 434–44 (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016)).

## LEGAL ANALYSIS

As examined herein, the Court first addresses First Cash's Motion. The Court then analyzes whether the Parties agreed to arbitrate, and if the Parties delegated arbitrability of this dispute to the arbitrator. The Court concludes that the Parties agreed to arbitrate and that the arbitration clause had a valid delegation clause.

Next, the Court turns to Sharpe's Motion to determine whether his arguments for invalidating the arbitration agreement have any merit. Because the Court finds Sharpe's contentions lacking, the Court denies his Motion and refers this dispute to arbitration.

### A. The Parties agreed to arbitrate in the Agreements.

The Court must first determine whether the parties agreed to arbitrate. *See Arnold v. HomeAway, Inc.,* 890 F.3d 546, 550 (5th Cir.

4

2018). Because arbitration agreements are contracts, this first step in the analysis is simply a question of contract formation that is guided by applicable state contract-law principles. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id.* (quoting *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989)).

Here, the Agreements contain choice of law provisions dictating Texas law governs this dispute. Under Texas law, "a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S2019, WL 4861435, at *3 (N.D. Tex. Oct. 2, 2019) (citing *Huckaba v. Ref-Chem. L.P.*, 892 F.3d 686, 689 (5th Cir. 2018)). First Cash's Complaint alleges, and its evidence shows, that the Parties entered a binding contract. Specifically, First Cash establishes that: (1) First Cash offered to buy businesses and assets from Sharpe; (2) the Parties accepted the terms of that offer, as memorialized by the Agreements; (3) there was mutual assent between the Parties—they negotiated the Agreements with the benefit of counsel; (4) each party consented to the terms of the Agreements; and (5) the Agreements were executed with signatures from all contractual parties (as internally defined in the Agreements). *See* ECF No. 39 at 1–84.

Sharpe first responds with an unpersuasive choice-of-law argument by citing an unauthoritative, inapplicable Restatement provision. ECF No. 66 at 13–18 (citing Restatement (Second) Of Conflict Of Laws § 187 (1971)). Sharpe contends that the Agreements "must comply with North Carolina public policy despite the existence of the choice-of-law provision in favor of Texas law." *Id.* at 13. Sharpe claims that Texas law should not apply because the Agreements have "no relation whatsoever" to Texas. *Id.* Instead, Sharpe argues that the choice-of-law provision is merely an attempt to "thwart or offend the public policy of the state

5

whose law would otherwise apply." *Id.* (emphasis and citations omitted). Sharpe's theory largely ignores the substance of First Cash's assertion that Texas law governs this case, despite the choice-of-law provision.

Sharpe next contends that he did not agree in his individual capacity to the Agreements, or the arbitration clauses contained therein. *Id.* at 20. He claims that signing the Agreements as a 100% Shareholder of the selling entity does not mean he should be bound in his individual capacity. *Id.* In its Reply, First Cash states that "the evidence before the Court clearly establishes that [Sharpe] signed the Agreements in his individual capacity." ECF No. 71 at 19. In support, First Cash argues that the Agreements identified Sharpe as an individual contractual party, and defined him and the selling entities together as "Seller Parties." ECF No. 39 at App. 4, 43. The Agreements state that the Seller Parties "jointly and severally" made the representations and warranties set forth in the Agreements. *Id.* at App. 10–11, 49–50.

The Court agrees with First Cash: the evidence shows that, as a matter of law, the Parties formed the Agreements that contained arbitration agreements.

*First*, the Agreements contained choice-of-law provisions dictating that the Agreements would be governed in accordance with Texas law. ECF No. 39 at App. 22, 61. The Court disagrees with Sharpe's initial contention that North Carolina law would axiomatically apply absent the choice-of-law provision. Nor can Sharpe show that the Agreements "thwart or offend" North Carolina's public policy. First Cash's Reply also undermines Sharpe's argument that Texas has no ties to this transaction. ECF No. 71 at 10. For instance, First Cash and its subsidiaries maintain their principal offices in Texas, and First Cash negotiated and issued contractual payments from Texas. *Id.* The Court thus concludes that the choice-of-law provision is valid, and Texas law governs the Court's interpretation of the Agreements.

*Second*, the Court concludes First Cash showed that the Agreements are valid contracts under Texas law. First Cash provided summary judgment evidence showing the Agreements satisfy each of the elements of contract formation under Texas law. Specifically, the Court concludes

6

that: (1) First Cash offered to buy businesses and assets; (2) both Parties accepted the offered terms, as shown by the Agreements; (3) there was mutual assent to the Agreements by all contractual parties; (4) each party consented to the terms of the Agreements; and (5) all contractual parties (as internally defined in the Agreements) executed the Agreements with their signatures. ECF No. 39 at App. 1–84.

*Finally*, the Court concludes that the Parties agreed to be bound by the arbitration clauses contained in the Agreements. Despite Sharpe's last-minute attempt to undermine the veracity of his signature on the Agreements (by questioning differences in "font size and font strength (darkness)" and other formatting changes), he stops short of outright denying that he actually signed the Agreements. ECF No. 65 at 21; *see also* ECF No. 44-4 Sharpe Aff. at ¶ 12 ("I do not *believe* that I signed any of the two [Agreements] that are at issue in this lawsuit . . . .") (emphasis added). Nor could he; First Cash provides copies of Sharpe's signature on both Agreements, made in both his representative *and* individual capacity. ECF No. 70 at 26, 65. Thus the Court concludes both First Cash and Sharpe agreed to be bound by the Agreements and the arbitration clauses contained therein.

### B. The Agreements contain valid delegation clauses.

Having determined that the Parties agreed to arbitrate, the Court next determines whether the Agreements contain delegation clauses. A delegation clause answers the question of who decides the issue of arbitrability—the Court or the arbitrator.

Thus, the Court must ascertain whether the Parties intended to have an arbitrator decide whether any given claim must be arbitrated. If the Parties did delegate the issue of arbitrability to the arbitrator, the Court passes the baton to the arbitrator. If they did not, the Court would be tasked with determining whether this dispute falls within the scope of the arbitration clauses.

Parties are generally free to delegate the question of arbitrability to an arbitrator. *See Arnold*, 890 F.3d at 551 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010)). Courts, however, may not assume parties have agreed to arbitrate threshold issues absent clear and

unmistakable evidence of their intent to do so. *Id.* The Fifth Circuit has repeatedly held that a stipulation among parties that the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules") will govern the arbitration of disputes generally constitutes such "clear and unmistakable" evidence. *E.g.*, *id.* (citing *Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*, 687 F.3d 671, 674–75 (5th Cir. 2012)).

Here, the Parties expressly adopted AAA Rules in their Agreements.[1] The AAA Rules state: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AM. ARB. ASS'N, COM. ARB. RULES & MEDIATION PROC. R-7(a) (2013), https://www.adr.org/rules. Thus, under Fifth Circuit caselaw, the Parties' "express adoption of these rules presents clear and unmistakable evidence that [they] agreed to arbitrate arbitrability." *Cooper v. WestEnd Cap. Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (quoting *Petrofac, Inc.*, 687 F.3d at 675) (concluding that express adoption of AAA arbitration rules showed parties' intent to arbitrate arbitrability); *see also Dow Roofing Sys., LLC v. Great Comm'n Baptist Church*, No. 02-16-0395-CV, 2017 WL 3298264, at *3 (Tex. App.—Fort Worth Aug. 3, 2017, no pet.) (Pittman, J.) (holding that when an arbitration clause requires arbitration in accordance with AAA rules, those rules become part of the arbitration clause and give the arbitrator authority to decide the scope of the agreement).

The Court concludes that the arbitration clauses, by incorporating the AAA Rules, contain valid delegation clauses. Accordingly, it is for the arbitrator, not the Court, to determine whether this dispute falls in the scope of the arbitration clauses.

---

[1] The Agreements state: "EACH PARTY HEREBY AGREES AND CONSENTS THAT ALL DISPUTES WILL BE DECIDED BY BINDING ARBITRATION, CONDUCTED IN TARRANT COUNTY . . . **UNDER THE THEN CURRENT COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION**[.]" ECF No. 70. at 23, 62 (emphasis added).

**C. Sharpe's cross-motion for summary judgment does not show he is entitled to judgment as a matter of law, nor does it detract from First Cash's Motion.**

Sharpe raised several arguments in his own motion for summary judgment seeking to void the arbitration clauses. *See* ECF No. 43. Sharpe fails to show that he is entitled to judgment as a matter of law, nor do his arguments even effectively undermine First Cash's Motion. The Court accordingly denies Sharpe's motion for summary judgment.

1. <u>Sharpe signed the arbitration clauses in his individual capacity.</u>

Sharpe again argues that he did not sign the Agreements. ECF No. 43 at 5–6, 12–14. Sharpe claims that the "signature lines [on the Agreements] are blank" and that First Cash "failed to produce any evidence to show that [] Sharpe intended to be individually bound" by the Agreements. *Id.* at 13.

The Court already rejected this argument in Section A and concluded that the Agreements bore Sharpe's signature. Contrary to Sharpe's contention, First Cash proffered evidence showing Sharpe signed the Agreements in both his individual and representative capacities. ECF No. 70 at ECF No. 39 at App. 26, 65. The Court again rejects this groundless assertion and denies this portion of Sharpe's motion.

2. <u>The arbitration clauses are not void as being against public policy.</u>

Sharpe rehashes his already-rejected argument that the Agreements are not governed by the Federal Arbitration Act because they do not involve interstate commerce. And applying the choice-of-law provision in favor of Texas would be against public policy because it would "thwart or offend the public policy of the state whose law would otherwise apply"—North Carolina, according to Sharpe. ECF No. 43 at 17.

The Court already addressed the meat of this argument in Section A, above, and found it too lean. Here, as Sharpe is affirmatively moving for summary judgment, his burden is even higher. But he cites sparse evidence that merely discusses the citizenship of some parties to the Agreements and a lack of physical travel during negotiations. ECF No. *Id.* 18–21. This scant evidence falls far short of establishing that the arbitration language is void as a matter of law. Sharpe seems more

9

concerned with the implications of the choice-of-law provisions than any supposed oppression from the arbitration clauses. The Court denies this portion of the summary judgment argument.

3. <u>The arbitration clauses are not substantively unconscionable.</u>

Sharpe next argues that the arbitration clauses are unenforceable because they are substantively unconscionable. Because Sharpe attacks only the arbitration clauses as unconscionable, but not the Agreements in their entirety, the Court addresses this issue instead of delegating it to the arbitrator. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004).

In Texas, the general test for substantive unconscionability is "whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001). The focus is on preventing "oppression and unfair surprise." *Id.* "The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement." *Id.* The Court concludes that Sharpe falls woefully short of meeting his burden on this point.

Sharpe's sole argument is that "the arbitration clauses impose a hardship on [him] and the key witnesses to this matter." ECF No. 43 at 22. The hardships he describes are exclusively related to travel expenses to attend the arbitration in Texas. *Id.* Sharpe argues that these expenses are alone sufficient to make the arbitration clauses substantively unconscionable as "oppressive" and "grossly unfair." *See id.* He offers no evidence showing what the expenses would be, nor any metric for determining the relative reasonableness of such expenses. *Id.* at 21–22. Sharpe offer no authority supporting his theory that such expenses alone would be sufficient to render arbitration clauses unconscionable. *Id.* This dog won't hunt; the Court denies summary judgment this point.

4. <u>First Cash did not waive its right to arbitrate this dispute.</u>

Sharpe finally argues that First Cash waived its right to arbitrate this dispute. The first issue to decide is whether this is an issue for the Court or the arbitrator to decide. Where a defense does not specifically

10

relate to the arbitration agreement, it must generally be submitted to the arbitrator as part of the underlying dispute. *Banc One Acceptance Corp.*, 367 F.3d at 430 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (noting that "the presumption is that the arbitrator should decide allegations of waiver . . .")).

The Fifth Circuit has, however, recognized an exception to this general rule where waiver would be based on parties' litigation-conduct before the court. Specifically, when the alleged waiver "depends on the conduct of the parties before the district court," "the court, not the arbitrator, is in the best position to decide whether the conduct amounts to a waiver under applicable law." *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 802 (5th Cir. 2017) (quoting *Tristar Fin. Ins. Agency v. Equicredit Corp. of Am.*, 97 F. App'x. 462, 464 (5th Cir. 2004)). Unlike other types of waiver, litigation-conduct waiver "implicates courts' authority to control *judicial* procedures or to resolve issues . . . arising from *judicial conduct*." *Id.* at 803 (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007)) (emphasis in the original). Accordingly, "parties would expect the court to decide whether one party's conduct before the court waived the right to arbitrate. *Tristar Fin. Ins. Agency, Inc.*, 97 Fed. App'x at 464. Because the allegation of waiver is based on litigation-conduct, the Court decides whether First Cash waived its right to arbitrate this dispute.

Under Fifth Circuit precedent, a party waives its right to arbitrate if it: (1) "substantially invokes the judicial process," and (2) thereby causes "detriment or prejudice" to the other party. *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014) (citation omitted). However, as federal policy favors arbitration, "[t]here is a strong presumption against finding a waiver of arbitration." *Id.* at 421–22.

Sharpe argues that First Cash waived its right to arbitrate, due to its own actions, but because of the actions of its subsidiary, FCFS NC. He argues that FCFS NC (who is not a party to this case) litigated issues arising from the facts at issue here in another case. Sharpe offers no evidence or authority to support his next argument: that First Cash and FCFS have a sufficient relationship to establish "virtual representation" in the previous litigation because First Cash owns FCFS NC. Because

11

FCFS NC engaged in discovery and litigation in that ostensibly related case, Sharpe argues he would be prejudiced if arbitration were allowed to proceed. Sharpe also raises red-herring arguments of claim preclusion and res judicata that the Court will not address. The Court is not inclined to explore such a morass of rabbit-holes.

First Cash argues in response that it was not involved in previous litigation on this dispute, nor were its allegations against Sharpe in the Arbitration Action previously litigated. ECF No. 68 at 30–32. First Cash argues that Sharpe is not mentioned in factual background of the complaint in the case that Sharpe claims is related. *Id.* (citing ECF No. 44 at App. 127–33). First Cash shows it was not a party, nor signatory, to the employment confidentiality agreements at issue in that case. *Id.* (citing ECF No. 44 at App.107–26).

The Court disagrees with Sharpe. Instead, the Court concludes that First Cash did not substantially invoke the judicial process before invoking arbitration. In fact, First Cash filed this lawsuit and engaged the judicial process seeking only to resume the Arbitration Action. Similarly, Sharpe filed the North Carolina Case seeking an order to stay the Arbitration Action. Accordingly, the arbitration action proceeded both cases related to these Parties and these facts. Sharpe also offered no persuasive summary judgment evidence establishing any specific prejudice he would suffer by this case being returned to arbitration. His preclusion arguments based on the ostensibly related case are unpersuasive. He provided no evidence or authority to support his argument that First Cash "virtually represent[ed]" by FCFS NC in that case. Accordingly, Sharpe failed to carry his burden of establishing that First Cash waived its right to arbitrate this dispute. The Court denies this portion of Defendant's motion for summary judgment.

## ORDER

For the reasons detailed above, the Court **GRANTS** Plaintiff First Cash, Inc.'s Motion for Summary Judgment and **DENIES** Defendant Chadborne T. Sharpe Motion for Summary Judgment. This matter is accordingly **REFERRED** to arbitration.

**SO ORDERED** on this **1st day** of **July, 2022.**

*/s/ Mark T. Pittman*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE